# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSALIND NORMAN,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:07-2222** |
| **v.** | : | **(MUNLEY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **KMART CORPORATION t/d/b/a** | : | |
| **KMART and SUPER KMART;** | | |
| **KMART MANAGEMENT CORP.** | : | |
| **t/d/b/a KMART and SUPER** | | |
| **KMART; KMART OF** | : | |
| **PENNSYLVANIA LP t/d/b/a KMART** | | |
| **and SUPER KMART; AND SEARS** | : | |
| **HOLDING CORP t/d/b/a KMART** | | |
| **and SUPER KMART,** | : | |
| **Defendants.** | : | |

## <u>REPORT AND RECOMMENDATION</u>[1]

Pending before the court is a motion for summary judgment on behalf of defendants Kmart Corporation t/d/b/a Kmart and Super Kmart, Kmart Management Corporation t/d/b/a Kmart and Super Kmart, Kmart of Pennsylvania LP t/d/b/a Kmart and Super Kmart, and Sears Holdings Corp. t/d/b/a Kmart and Super Kmart (collectively referred to as "Kmart"). (Doc. No. 40). For the reasons set forth below, the court recommends that the

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

defendants' motion be **GRANTED**.

## I.    **FACTS AND PROCEDURAL BACKGROUND**[2]

The plaintiff, Rosalind Norman, was employed by Kmart from 1984 through 2005. Plaintiff began to work for Kmart, in 1984, as a part-time filler, stocking the counters and shelves with products. *See* Rosalind Norman Dep. 35:5-16, December 1, 2008. In 2000, the plaintiff was promoted to the store manager position at the Kmart store in Berwick, Pennsylvania, and she was later transferred to the Kmart store in Wilkes-Barre, Pennsylvania, where she was also employed as the store manager. *See* Norman Dep. 39:4-40:1.

As store manager, plaintiff was responsible for the implementation and enforcement of defendants' policies. *See* Norman Dep. 42:3-8. In addition, as store manager, the plaintiff had final authority over payroll and final responsibility for payroll at the store. *Id.* at 26:6-13. As such, it was plaintiff's responsibility to ensure that the associates at the store were paid properly. *Id.* at 123:15-19.

In May of 2005, while plaintiff was the store manager at the Wilkes-

---

[2] The court notes that it will indicate where facts are disputed, and that the Court will draw all reasonable inferences from disputed facts in the light most favorable to the plaintiff, the nonmovant. *Conopco, Inc. v. United States*, 572 F.3d 162, 165-66 (3d Cir. 2009).

Barre Kmart,  it was brought to the attention of Michael Houde, Kmart District Loss Prevention Manager, and Gary Ector, Kmart District Coach, that plaintiff was directing and allowing associates to work off the clock,[3] and then compensating those associates using 1) cash vouchers[4] and/or 2) personal time. Michael Houde Dep. 23:22-24:3, July 20, 2009; Gary Ector Dep. 22:1-16, 24:16-25:1, May 5, 2010; Michael Houde V.S. at ¶¶1, 3 and Gary Ector V.S. at ¶¶1, 3. As a result, Mr. Houde and Mr. Ector, along with Sherri Ellis, a District Trainer, began an investigation into plaintiff's actions. *See* Houde Dep. 38:15-25; Ector Dep. 19:1-25; Houde V.S. at ¶4; Sherri Ellis V.S. at ¶¶1, 3.

Investigation: Plaintiff's Use of Cash Vouchers

After interviewing several associates, the investigators, namely Mr. Houde, Mr. Ector, and Ms. Ellis, discovered that Plaintiff was paying associates with cash vouchers for performing tasks, such as painting and cleaning the store's grease trap, while the associates were not on the clock. *See* Houde Dep. 42:23-44:6; Ector Dep. 22:3-5; Ellis V.S. at ¶4. Moreover, on

---

[3] Working "off the clock" occurs when an associate who is required to punch in to a time recording system, fails to do so, and, as a result, works without having his or her time recorded. *See* Houde V.S. at ¶10.

[4] A cash voucher is documentation showing that cash has been paid from the store. *See* Houde Dep. 45:17-46:4.

July 6, 2005, the plaintiff provided Kmart with a typewritten statement in which she admitted that she paid Kmart associates, namely George Weitz and CJ White, with vouchers for painting the store and cleaning the store's grease trap. (Doc. No. 42-2 at 112). In addition, on July 5, 2005, plaintiff provided a handwritten statement to Kmart which stated that (1) she paid associates to paint parts of the store out of her own pocket while they were off the clock, and (2) she paid Weitz with vouchers to clean the store's grease trap, but that she was not sure if he was off the clock. *Id.* at 105.

<u>Investigation: Plaintiff's Use of Personal Time</u>

After interviewing several associates, the investigators, namely Mr. Houde, Mr. Ector, and Ms. Ellis, discovered that the plaintiff was permitting and enabling associates who were working off the clock to be compensated with personal time. For example, Donna Tomko, a Kmart hourly associate, told the investigators that she had been working off the clock while being paid with personal time, and that she was promised a four hour bonus for participating in plaintiff's manipulation of the payroll system. *See* Houde V.S. at ¶¶13, 15; Ector V.S. at ¶9; Ellis V.S. at ¶8. Accordingly, the store's surveillance footage confirmed that Ms. Tomko had worked on days when she had not punched in. Houde V.S. at ¶18. In addition, the investigators also

4

found that there were other associates, like Ms. Tomko, who had worked off the clock and had been paid with personal time to do so. *See* Houde V.S. at ¶19; Ector V.S. at ¶11; Ellis V.S. at ¶10.

As a result of learning that several associates were working off the clock while being paid with personal time to do so, Mr. Houde, Mr. Ector and Ms. Ellis, interviewed Donna Bogart, the Human Resources Manager at plaintiff's store on July 5, 2005. Houde V.S. at ¶20; Ector V.S. at ¶12; Ellis V.S. at ¶11. At the interview, Ms. Bogart told the investigators that, during a time of budget cuts, she and plaintiff discussed what could be done to meet the store's payroll obligations. *See* Houde V.S. at ¶24;  Ector V.S. at ¶14; Ellis V.S. at ¶15. After a discussion between plaintiff and Ms. Bogart, the plaintiff decided that they would pay certain trustworthy associates with personal time to work off the clock, so that the cost would be reflected in a different account and not her store's payroll account. *See id. See also* (Doc. No. 42-5 at 39-40); Norman Dep. 161:21-25; Ector Dep. 33:4-12. As such, plaintiff testified at her deposition that she had instructed Ms. Bogart to engage in this payroll manipulation. *See* Norman Dep. 153:14-15. Specifically, she recalled telling Ms. Bogart "[o]kay. Donna, do what you got to do." *See id.* Accordingly, Ms. Bogart admitted to keying in personal time for eight (8) different associates on

days they worked off the clock and then clocking in those associates on days they did not work to "pay back" the associates' time.[5] *See* (Doc. No. 42-5 at 39-40); Houde V.S. at ¶23; Ector V.S. at ¶13; Ellis V.S. at ¶12.

<u>Termination of Plaintiff's Employment</u>

Kmart's investigation concluded that plaintiff had instructed and permitted hourly associates to work off the clock, paid those associates using personal time or vouchers, and clocked those employees in at a later time when they were not working in order to manipulate Kmart's payroll system in violation of numerous company policies. Houde V.S. at ¶32; Ector V.S. at ¶17; Ellis V.S. at ¶15; Jemo V.S. at ¶3. Specifically, defendants point to the following policies and documents as related to accurate store recording and reporting of employees' time that plaintiff had violated:

1. Defendants' Code of Conduct states that "[f]orgery or alteration of any documents" and "[f]alse, fictitious, or misleading entries or reports" constitute instances of fraud which employees are obligated to report. Furthermore, the Code of Conduct states that violation of the code is punishable by termination of one's employment. (Doc. No. 42-2 at 58).

---

[5] This practice was referred to as "comp day," namely when an associate "worked four hours off the clock, Ms. Bogart gave them four hours of personal time. And then when they wanted their personal time back, they took that time off and she paid them for it." *See* Norman Dep. 145:9-23.

2.    The Kmart Management Integrity Statement states that "[f]alsifying refunds or cash vouchers, records or reports" is a violation of company policy for which there will be "NO SECOND CHANCE[S]." (Doc. No. 42-2 at 64-65).

3.    Kmart's Policy on Integrity and Conflict of Interest states that "FALSIFYING STORE RECORDS OR REPORTS" is an intolerable action that may result in immediate dismissal and for which "[t]here will be no second chances." (Doc. No. 42-2 at 67).

4.    Kmart's Associate Handbook states that "[i]mproper recording of time worked," and "[f]alsification of personnel or other records" is a violation of Kmart's Honesty and Integrity policy. (Doc. No. 42-2 at 85).

5.    Kmart's Proper Payroll Administration memo states that "[i]t is the Store Manager's responsibility to ensure that are [sic] associates are paid per State and Kmart guidelines." (Doc. No. 42-2 at 92).

6.    Kmart's Punch Editing and Exception Report states that "hourly associates must use the time clock to punch in at the beginning of their shift and to punch out at the end of their shift." (Doc. No. 42-2 at 99-100).

7.    An e-mail notice dated March 20, 2003 titled Integrity of Store Reporting states that "'[m]anipulating' payroll expense," which includes "[a]llowing associates to work 'off the clock'" is an unacceptable practice. (Doc. No. 42-2 at 102-03).

(Doc. No. 41 at 15-16). Furthermore, defendants contend that Kmart's Payroll Administration policy specifically ended the use of vouchers as a means to pay employees as of May 2000. (Doc. No. 42-2 at 95).

7

After the investigation was concluded, Chris Jemo, Director of Field Human Resources, reviewed the investigation file which contained statements made by the store employees, plaintiff, and Ms. Bogart, and recommended that plaintiff's employment be terminated due to her violation of company policy. *See* Jemo Dep. 9:14-18, 12:24-13:11, 14:22-15:4; Chris Jemo V.S. at ¶1. Mr. Ector also recommended termination of plaintiff's employment "based on the violation and the severity of that violation of company policy." Ector Dep. 56:23-25. Therefore, according to Kmart, plaintiff's employment was terminated on July 8, 2005 for numerous and varying violations of Kmart's policies. *See* Ector Dep. 28:18-20; Ector V.S. at ¶2; Mary Jo Duffy V.S. at ¶4.

Plaintiff's Replacements

Following the termination of plaintiff's employment as store manager, Kmart replaced her with Frank Mussich. *See* Norman Dep. 192:9-12. Mr. Mussich was older than the plaintiff. *See id.* at 192:19-21. Mr. Mussich ultimately left Kmart due to medical reasons and, therefore, Kmart hired Theresa Williams to replace Mr. Mussich as the store manager. (Doc. No. 44-15). Ms. Williams is nine years younger than the plaintiff. *Id.*

Plaintiff's Discrimination Claims

Despite defendants' reasons for her termination, plaintiff alleges that

she was terminated for discriminatory reasons. Specifically, plaintiff asserts that she was terminated due to her age and/or gender.

In support of her age discrimination claims, plaintiff points to three younger individuals who either used cash vouchers to pay employees, worked off the clock, or knowingly permitted other employees to work off the clock, and who she alleges were treated more favorably than her. Specifically, plaintiff points to Donna Bogart, the Human Resources Manager at the Wilkes-Barre Kmart, who was six year younger than her, and had admitted to working off the clock, without being penalized. (Doc. No. 44-2); (Doc. No. 44-9). Next, plaintiff points to Peter Bowman, a District Manager who was younger than her, and had paid employees by vouchers to steam and spray paint the exterior of Kmart buildings.[6] *See* Norman Dep. 123:24-124:7; 185:1-11. Lastly, plaintiff points to Herb Grainer, who was a district manager at the time of plaintiff's termination, and who was sixteen years younger than her, and who had allegedly permitted Ann Marie McCrea, his secretary (or administrative coordinator), to work off the clock. *See* Mary Jo Duffy Dep. 50:12-13, May 20, 2009; Norman Dep. 188:2-189:8. More specifically, plaintiff

---

[6] The court notes that defendants dispute that Peter Bowman paid employees with vouchers because they allege that any employees who engaged in similar practices were terminated. *See* Houde V.S. at ¶39; Ector V.S. at ¶24.

alleges that Ann Marie McCrea sent emails at all times of the day, night and weekend, and bragged that she worked nonstop, even though she was a non-exempt hourly employee. *See* Norman Dep. 188:2-189-8; Herb Grainer Dep. 16:7-17:5, May 5, 2010.

In support of plaintiff's gender discrimination claims, she points to five male employees who she alleges were treated more favorably than her. Specifically, the plaintiff points to (1) John Copeland, who used cash cards to pay employees, and was only chastised for this practice, Norman Dep. 184:22-185-1; (2) Peter Bowman, who used vouchers to pay employees to steam and spray paint the building, Norman Dep. 185:1-10; (3) Herb Grainer, who permitted his secretary to work off the clock, Norman Dep. 188:2-189:8 & (Doc. No. 44-10); (4) James Soucy, who preceded plaintiff as Wilkes-Barre store manager, from whom she observed and learned payroll practices and whom paid employees who worked without being clocked in by providing them use of personal days in the number of hours worked without being clocked in, Norman Dep. 185:16-22 & Norman Aff. at ¶¶2-3; and (5) Pete Lindenberger, who preceded plaintiff as Wilkes-Barre store manager, and who paid employees who worked without being clocked in by providing them use of personal days in the number of hours worked without being clocked in,

Norman Aff. at ¶¶2-3.[7]

On December 6, 2007, the plaintiff commenced this action by filing a complaint. The gravamen of the plaintiff's complaint is that her employment was terminated due to her gender and age. Consequently, the plaintiff claims that the defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §623(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a).

On September 3, 2010, the defendants filed a motion for summary judgment that was accompanied by a brief in support and a statement of facts. (Doc. No. 40); (Doc. No. 41); & (Doc. No. 42). On September 20, 2010, the plaintiff filed a brief in opposition, a response to defendants' statement of facts and a counterstatement of facts. (Doc. No. 44); (Doc. No. 46); (Doc. No. 47); & (Doc. No. 48). On September 29, 2010, the defendants filed a reply brief and a answer to the plaintiff's counterstatement of facts. (Doc. No. 49); (Doc. No. 50).  On October 19, 2010 the plaintiff filed a sur reply brief. (Doc. No. 53). Accordingly, the motion is ripe for our consideration.

---

[7] As will be discussed in the legal analysis section, the defendants dispute the admissibility of plaintiff's affidavit which identifies Peter Lindenberger and James Soucy as individuals who paid employees to work off the clock.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[8]

---

[8] If the non-moving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar

## III.   LEGAL ANALYSIS

### A.   Count I - ADEA Claim

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). Where, as here, there is no direct evidence of discrimination, age discrimination claims are analyzed under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[9] *See Witcher v. Sodexho, Inc.*, 247 Fed. Appx. 328 , 330 (3d Cir. 2007).

First, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination. *Reeves  v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 ( 2000) (citing *St. Marys Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). A *prima facie* case requires the plaintiff to establish four elements:

---

material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

[9] It is important to note that although the burden of production may shift during the *McDonnell Douglas* inquiry, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the employee. *See Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005).

(1) that she belongs to the class protected by the ADEA-employees above forty years old; (2) that she is qualified for the position; (3) that she suffered an adverse employment decision; and (4) evidence adequate to create an inference that the employment decision was because of her age. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *Monaco v. American Gen'l Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004) (citing *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

The fourth element may be satisfied if a plaintiff can show she was replaced by someone sufficiently younger as to create an inference of discrimination. *Monaco, 359 F.3d at 300* (citing *Duffy*, 265 F.3d at 167). In respect of the "sufficiently younger" standard, "'there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot.'" *Id. at 307* (quoting *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir.1999)) (omissions in original). In addition, in *O'Connor*, "the Supreme Court cleared the way for other methods of proof as well, . . . holding that an ADEA plaintiff makes out a *prima facie* case of age discrimination with any evidence that creates an inference that the adverse employment decision was based on illegal discrimination against the plaintiff because of his age."

15

*Burtman v. Lance*, No. 06-1507, 2008 U.S. Dist. LEXIS 21278, at *39 (M.D. Pa. Mar. 17, 2008) (citing *O'Connor, 517 U.S. at 312*). For example, in *Fitzpatrick v. National Mobile Television*, 364 F. Supp. 2d 483 (M.D. Pa. 2005) (Munley, J.), the court noted that an employee may be able to satisfy the fourth element by showing the defendant terminated an older employee for a reason for which it would not have terminated a younger employee, and that under those circumstances the age of the older employee's replacement would be immaterial. *See id.* at 492 n.4 (citing *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 353-54 (3d Cir. 1999). If the plaintiff makes her *prima facie* showing, there is a presumption of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506 (citing *Burdine*, 450 U.S. at 254).

The burden then shifts to the defendant to rebut the presumption by "produc[ing] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142 (citing *Burdine*, 450 U. S. at 254). The defendant's burden is "relatively light." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant produces evidence of a nondiscriminatory reason for the challenged conduct, the presumption "drops from the case." *St. Mary's Honor Ctr.*, 509 U.S. at 507

(quoting *Burdine*, 450 U.S. at 255).

The burden of production then returns to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason is pretextual and "unworthy of credence." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 256). To show that the defendant's rationale is pretextual, the plaintiff must adduce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Tomasso*, 445 F.3d at 706 (quoting *Fuentes*, 32 F.3d at 764). It is not enough for the plaintiff to show that the defendant was " wrong or mistaken" in its action. *Id.* (quoting *Fuentes*, 32 F.3d at 764). Rather, to defeat summary judgment, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (internal quotations and citation omitted) (bracketed material in original) (citing *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993); *Ezold*

17

*v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 527, 531 (3d Cir. 1992); *Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 128 (3d Cir. 1990)); *see Tomasso*, 445 F. 3d at 706 (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)); cf. *id.* at 704 ("First, [the plaintiff] has shown sufficient implausibilities and inconsistencies in [the defendant's] primary rationales to avoid summary judgment. Second, a rational factfinder could dismiss the secondary reasons as pretextual, not because they played no role in [the plaintiff's] layoff but because they cannot explain the layoff sufficiently.").

With respect to plaintiff's *prima facie* case, the parties agree that plaintiff has satisfied the first three elements, namely that she belongs to the protected class, that she is qualified for her position, and that she suffered an adverse employment decision. Accordingly, the parties dispute whether plaintiff can satisfy the fourth element, namely whether she can come forth with evidence adequate to create an inference that the adverse employment decision was because of her age.

The parties first dispute whether plaintiff showed she was replaced by someone sufficiently younger as to create an inference of discrimination. *See Monaco*, 359 F.3d at 300 (citing *Duffy*, 265 F.3d at 167). Defendants argue that because, Mr. Mussich, plaintiff's successor, was much older than the

plaintiff she cannot show she was replaced by someone sufficiently younger. However, the plaintiff argues that Mr. Mussich was merely a placeholder as he was only employed at the Wilkes-Barre store for a brief period of time. Plaintiff further contends that, in less than a year from her termination, she was ultimately replaced by Theresa Williams, an individual nine years younger than her. As such, the plaintiff urges the court to focus on plaintiff's ultimate or final replacement, as opposed to her temporary immediate successor, and find that she is entitled to an inference of discrimination.

Upon considering the parties arguments, the court is not persuaded that plaintiff can show she was replaced by someone sufficiently younger as to create an inference of discrimination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729-30 (3d Cir. 1995) (a court is not limited to only considering a plaintiff's final replacement). Here, the evidence adduced shows that plaintiff was replaced by Mr. Mussich, someone older than her, for almost a year. Moreover, the evidence does not show that Mr. Mussich was a temporary placeholder, and the defendants point out that plaintiff has not pointed to any evidence which would indicate he was merely a placeholder. Rather, the plaintiff's own testimony indicates she was aware that Mr. Mussich was older than her, and that he left Kmart due to medical reasons. *See* Norman Dep.

192:11-21. Thus, the court does not find the fact that Kmart later replaced Mr. Mussich with someone younger than him gives rise to an inference of age discrimination with respect to plaintiff's termination.

In the alternative, the plaintiff contends that even if she is unable to show that she was replaced by someone sufficiently younger, she can still satisfy the fourth element of her *prima facie* case because she can show that the defendants failed to investigate the same misconduct by younger employees, and that the defendants terminated her for a reason for which it would not have terminated younger employees. In support of this contention, the plaintiff argues that Peter Bowman, Donna Bogart and Herb Grainer were treated more favorably than her, and that these younger individuals had engaged in the same conduct as her, such as using cash vouchers to pay employees, working off the clock, or knowingly permitting other employees to work off the clock. Specifically, plaintiff contends that (1) Peter Bowman, a District Manager, younger than her, paid employees by vouchers to steam and spray paint the exterior of Kmart buildings; (2) Donna Bogart, the Human Resources Manger, who was six years younger than her had admitted to working off the clock; and (3) Herb Grainer, a District Manager who was sixteen years younger than her, had permitted his secretary, Ann Marie

20

McCrea, to work off the clock.

Assuming that Kmart's management was aware of the asserted conduct by Mr. Bowman, Ms. Bogart and Mr. Grainer, and they failed to investigate or discipline those employees, the court still cannot find that the treatment of plaintiff gives rise to an inference of discrimination. More specifically, the court does not find that the asserted misconduct by Mr. Bowman, Ms. Bogart and Mr. Grainer amounted to the same degree of severity as plaintiff's misconduct, namely engaging in payroll manipulation by permitting and directing at least eight associates to work off the clock, and then compensating those associates with personal time or vouchers. Moreover, the plaintiff has not argued or adduced evidence that indicates Ms. Bogart, Mr. Bowman and Mr. Grainer each engaged in the same prohibited practices that she had engaged in. For example, although plaintiff asserts Mr. Bowman used vouchers to pay employees, there is no indication that these employees were working off the clock, and, similarly, although plaintiff asserts Mr. Grainer permitted his secretary to work off the clock, there is no indication that he compensated her with personal time or vouchers. As such, the court cannot find that plaintiff was investigated and terminated for the same violations of Kmart's policies that Mr. Bowman, Ms. Bogart and Mr. Grainer had engaged

21

in because their alleged violations were not of comparable seriousness to plaintiff's own infractions.

Furthermore, the court notes that there are alternatl've reasons why plaintiff's arguments with respect to Mr. Bowman, Ms. Bogart and Mr. Grainer do not give rise to an inference of discrimination. First, with respect to Mr. Bowman, plaintiff has argued that he was younger than her and paid employees with vouchers. However, the plaintiff has not indicated how old Mr. Bowman is and, as such, the court cannot find that plaintiff was treated differently from someone who was significantly younger than her in order to give rise to an inference of age discrimination.  Second, with respect to Ms. Bogart, the plaintiff has argued that she worked off the clock. However, Ms. Bogart had done so pursuant to plaintiff's directions as plaintiff was the store manager, and Ms. Bogart worked under plaintiff.  As such, the plaintiff played a greater role in the violations of company policy than Ms. Bogart. Finally, with respect to Mr. Grainer, the plaintiff has argued that he permitted his secretary to work off the clock. To the extent plaintiff contends that there was no investigation of Mr. Grainer and Ms. McCrea, his secretary, the record belies plaintiff's assertions. Specifically, due to plaintiff's allegations that Ms. McCrea was not being paid appropriately, Kmart conducted an investigation, and

22

plaintiff has not shown that this investigation resulted in a finding that Mr. Grainer permitted Ms. McCrea to work off the clock. Therefore, the court cannot find that the defendants' treatment of Mr. Bowman, Ms. Bogart and Mr. Grainer gives rise to an inference of age discrimination.

In addition, the plaintiff points to a few other incidents that she believes give rise to an inference of unlawful discrimination. First, she points to a conversation between Michael Bidwell, a District Loss Prevention Manager, and Lori Badger, a District Trainer and Administrative Assistant to Mr. Bidwell. Specifically, during that conversation, Ms. Badger told Mr. Bidwell that plaintiff should not be terminated because there were other managers who were doing things just as bad or worse. Despite Ms. Badger's statement to Mr. Bidwell, plaintiff contends that Kmart failed to adequately follow up and find out who those other managers were, and what type of practices those managers were engaging in. Plaintiff contends that Ms. Badger had refused to provide any information as to who these managers were, and Kmart did not require her to do so even though it was a violation of Kmart policies to refuse to cooperate in a investigation. It appears that plaintiff argues that Kmart's inadequate investigation and discipline of Ms. Badger for refusing to provide additional information should give rise to an inference of age discrimination.

However, as defendants properly point out, the conversation between Mr. Bidwell and Ms. Badger and the resulting lack of investigation or discipline of Ms. Badger, does not appear to have any connection to plaintiff's age discrimination claim. For example, there is no argument made by plaintiff that Ms. Badger was significantly younger than her and that she was treated differently. Moreover, despite being asked by Mr. Houde and Mr. Ector, Ms. Badger never identified the other managers, and, therefore, there is no indication that any other managers, younger or otherwise, received more favorable treatment than the plaintiff. Furthermore, Ms. Badger had also stated that she had overreacted when she made that statement regarding the practices of other managers. As such, the Bidwell/Badger conversation does not give rise to an inference of discrimination.

Next, the plaintiff points to an email that she sent to nine members of Kmart's management in August 2005, after she was terminated, regarding other employees' violations of Kmart policies. Specifically, plaintiff states that this email included allegations that (1) Herb Grainer permitted Ann Marie McCrea worked off the clock, and (2) other supervisors had permitted their associates to work off the clock. Plaintiff asserts that Kmart failed to investigate or pursue the allegations in her email, and that this supports an

inference of discrimination.

The court disagrees. First, with respect to plaintiff's allegations against Mr. Grainer, as explained above, the company did investigate those allegations. Second, with respect to plaintiff's other allegations in the email, the record indicates that Kmart's management had construed her amorphous allegations as those of an angry and disgruntled employee, and that it had nothing to do with her age.

Finally, plaintiff points to Mr. Ector's testimony which indicated that the average hourly pay rate of employees at plaintiff's store was higher because there was a large number of tenured employees with a higher average pay rate. As such, Mr. Ector explained that this made it more difficult for plaintiff to reduce payroll to the amount budgeted, especially under tight time constraints. Plaintiff argues that this was a triggering event for the use of personal days to compensate employees in the Wilkes-Barre store. However, it is unclear as to how this gives rise to an inference of discrimination. At best, it appears to serve as a reason for why plaintiff violated company policies.

In sum, the court does not find that plaintiff has satisfied the fourth element of her *prima facie* case because she has not adduced sufficient evidence that supports an inference of unlawful age discrimination.

Specifically, she has not shown that she was replaced by someone sufficiently younger in order to give rise to an inference of discrimination, nor has she shown that she was terminated under circumstances that give rise to an inference of discrimination. Specifically, none of the younger individuals who she argues engaged in the same conduct as her, namely Ms. Bogart, Mr. Bowman or Mr. Grainer, violated company policies to the same extent that she violated Kmart's policies. As such, there is no indication that any younger individual who was in a situation that paralleled plaintiff's received more favorable treatment. In addition, the remainder of the evidence that plaintiff has pointed to simply does not support an inference of age discrimination. Rather, the record is replete with evidence that plaintiff was terminated for her violations of Kmart's policies. As such, the court recommends that defendants' motion for summary judgment on plaintiff's ADEA claim be granted.

## B.    Count II - Title VII Claim

Under Title VII it is unlawful for any employer "to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *See* 42 U.S.C. §2000e-2(a)(1). Here, plaintiff claims that the defendants terminated her

employment because of her gender.

Disparate treatment claims brought under Title VII based on indirect evidence are analyzed under the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), described above. *See* Part III[A], *supra*. Accordingly, the plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination. With respect to plaintiff's Title VII claim, she must make a *prima facie* showing of gender discrimination by establishing that (1) she belongs in the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) circumstances existed that support an inference of discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000). The Third Circuit has explained that a plaintiff may satisfy the fourth element of her *prima facie case* by showing that "similarly situated" employees outside of the protected class "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *See Davis v. City of Phila. Water Dep't*, 57 Fed. Appx. 90, 92 (3d Cir. 2003) (quoting *Anderson v. Haverford Coll.*, 868 F. Supp. 741, 745 (E.D. Pa. 1994)).

The parties do not dispute that plaintiff has satisfied the first three

elements of her *prima facie* case. Thus, the parties dispute whether plaintiff can satisfy the fourth element, namely whether she can show she was terminated under circumstances which give rise to an inference of unlawful discrimination on account of her gender.

Plaintiff argues that she can satisfy the fourth element because she can show that other comparators or similarly situated male individuals were treated more favorably than her. Specifically, the plaintiff points to (1) John Copeland, who used cash cards to pay employees, and was only chastised for this practice; (2) Peter Bowman, who used vouchers to pay employees to steam and spray paint the building; (3) Herb Grainer, who permitted his secretary to work off the clock;  (4) James Soucy, who preceded plaintiff as Wilkes-Barre store manager, from whom she observed and learned payroll practices and whom paid employees who worked without being clocked in by providing them use of personal days in the number of hours worked without being clocked in; and (5) Pete Lindenberger, who preceded plaintiff as Wilkes-Barre store manager, and who paid employees who worked without being clocked in by providing them use of personal days in the number of hours worked without being clocked in.

By way of response, defendants argue that Mr. Copeland, Mr. Bowman,

Mr. Grainer, Mr. Soucy, and Mr. Lindenberger are not valid comparators or similarly situated male employees, and, as such, plaintiff cannot show that similarly situated male individuals were treated more favorably than the plaintiff. For the reasons that follow, the court agrees.

First, the court finds that Mr. Bowman and Mr. Copeland are not comparable employees because they did not engage in the same conduct of comparable seriousness. Although the plaintiff has argued that Mr. Bowman and Mr. Copeland are comparators because they used vouchers and cash cards to pay employees, the defendants have properly pointed out that paying employees with vouchers or cash cards is not the same conduct as the plaintiff's manipulation of Kmart's payroll system, which also involved instructing employees to work off the clock and then enabling them to be compensated with personal time or vouchers. *See Anderson v. Haverford Coll.*, 868 F. Supp. 741, 745 (E.D. Pa. 1994) (plaintiff must establish that comparator's acts were of "comparable seriousness to his own infraction"). Second, the court finds that Lindenberger and Soucy are not valid comparators because the plaintiff has failed to show that Kmart had any knowledge of their alleged behavior and, therefore, the plaintiff cannot show

29

that Kmart chose not to address it.[10] *See Ade v. KidsPeace Corp.,* 698 F. Supp. 2d 501, 515 (E.D. Pa. 2010); *Moussa v. Commonwealth of Pennsylvania Dep. Of Public Welfare,* 289 F. Supp. 2d 639, 652 (W.D. Pa. 2003)* (employee who engages in similar conduct, but whose actions are not known to decision makers, cannot serve as comparator). Finally, to the extent plaintiff argues that Mr. Grainer should serve as a comparator because he permitted his secretary to work off the clock, as explained above, there is no evidence in the record that indicates the investigation into these allegations resulted in a finding that Mr. Grainer permitted Ms. McCrea to work off the clock. Alternatively, even if Mr. Grainer had permitted Ms. McCrea to work off the clock, the court still could not find that he is a valid comparator because his actions are not the same as plaintiff's actions which included allowing eight associates to work off the clock and then be compensated with personal time or vouchers. *See Anderson,* 868 F. Supp. at 745. Thus, none of the individuals that plaintiff has pointed to serve as proper comparators, and, as such, plaintiff cannot show that other similarly situated male employees were

---

[10] The court notes that defendants have also argued that the court should disregard plaintiff's arguments concerning Lindenberger and Soucy because these comparators are mentioned for the first time in plaintiff's sham affidavit. However, the court need not address this argument because even assuming that the court could consider the information in plaintiff's affidavit, the court finds that they are not appropriate comparators.

treated more favorably than the plaintiff in order to give rise to an inference of gender discrimination.

In addition, the plaintiff has argued that Kmart deliberately blinded itself to the asserted misconduct by Mr. Copeland, Mr. Bowman, Mr. Grainer, Mr. Soucy, and Mr. Lindenberger by failing and refusing to investigate the claims put forth by plaintiff, Ms. Badger and Ms. Bogart. As an initial matter, the court finds that plaintiff's argument is flawed because the relevant question is how Kmart's management reacted to *known* violations of company policy, and *not* whether Kmart's management investigated enough to find additional violations of company policy. *See Ade,* 698 F. Supp. 2d at 515; *Moussa*, 289 F. Supp. 2d at 652 (employee who engages in similar conduct, but whose actions are not known to decision makers, cannot serve as comparator). Nonetheless, it appears that plaintiff is referring to the email she sent to management in August 2005, the conversation between Ms. Badger and Mr. Bidwell, and Ms. Bogart's admission that she worked off the clock. As discussed above, the court does not find that the treatment of the Badger/Bidwell conversation, or plaintiff's email, gives rise to an inference of discrimination. Furthermore, with respect to Ms. Bogart, the plaintiff has failed to indicate why any additional investigation into her claims that she had been working off the clock would

have been necessary. Moreover, the record does not indicate that Ms. Bogart ever stated that Mr. Copeland, Mr. Bowman, Mr. Grainer, Mr. Soucy, and Mr. Lindenberger had been engaging in practices that violated defendants' policies. As such, the court does not find that the treatment of the plaintiff's email, the Badger/Bidwell conversation, or Ms. Bogart's admission that she worked off the clock supports an inference of gender discrimination.

Next, the plaintiff argues that the court should find an inference of gender discrimination simply because a majority of the store managers were male. *See* Ector Dep. 44:1-6, 50:1-10. However, the court cannot find the fact that a majority of the managers were male, alone, gives rise to an inference that the plaintiff was fired for a discriminatory reason.

Finally, plaintiff argues that Mr. Ector, Mr. Cairnduff and Mr. Houde failed to look into how other store managers stayed within their budgets, and that this should give rise to an inference of discrimination. Plaintiff further argues that had they inquired they would have discovered that Mr. Soucy and Mr. Lindenberger had engaged in similar practices to the plaintiff.

However, the court cannot find that the fact that Mr. Ector, Mr. Cairnduff and Mr. Houde failed to discover that others had engaged in the same practices as plaintiff supports an inference of discrimination. As indicated

above, an inference of discrimination may arise when there are *known* instances of comparable misconduct by similarly situated individuals, outside the protected class, and they receive more favorable treatment. *See Moussa, 289 F. Supp. 2d at 652*.

In sum, the court does not find that plaintiff has satisfied the fourth element of her *prima facie* case because she has not adduced sufficient evidence that supports an inference of unlawful gender discrimination. As such, the court recommends that defendants' motion for summary judgment on plaintiff's Title VII claim be granted.

## IV.   RECOMMENDATION

For the reasons elaborated above, **IT IS RECOMMENDED THAT,** defendants' motion for summary judgment, (Doc. No. 40), be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** July 28, 2011
O:\shared\REPORTS\2007 Reports\07-2222-01.wpd