## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSALIND NORMAN,** | : | **No. 3:07cv2222** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **KMART CORPORATION**, | : | |
| **t/d/b/a Kmart and Super Kmart;** | : | |
| **KMART MANAGEMENT** | : | |
| **CORPORATION, t/d/b/a Kmart** | : | |
| **and Super Kmart;** | : | |
| **KMART OF PENNSYLVANIA, LP,**: | | |
| **t/d/b/a Kmart and Super Kmart;** | : | |
| **SEARS HOLDINGS CORP.,** | : | |
| **t/d/b/a Kmart and Super Kmart;** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are plaintiff's objections to the report and recommendation of Magistrate Judge Malachy E. Mannion, which proposes that the court grant defendants' motion for summary judgment.

**Background**

This case arises out of Plaintiff Rosalind Norman's employment with Defendants Kmart Corporation ("Kmart"). Plaintiff alleges that she was terminated in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

Plaintiff began working for Kmart in October 1984 as a part-time filler, charged with stocking shelves. (Defendants' Statement of Material Facts (hereinafter "Defendants' Statement") (Doc. 42) at ¶¶ 1-2). Kmart promoted plaintiff to manager of their store in Berwick, Pennsylvania in 2000. (Id. at ¶ 3). Later, she transferred to the Wilkes-Barre, Pennsylvania store, where she also served as manager. (Id.).

In May 2005, Michael Houde, Kmart's District Loss Prevention Manager, and Gary Ector, Kmart's District Coach, were made aware that plaintiff had been directing employees[1] to work off the clock and then arranged for those workers to be paid with cash vouchers and personal time. (Id. at ¶ 4). In this context, "working off the clock" means that an employee who is required to punch into a time clock fails to do so but works anyway. (Id. at ¶ 5). That employee works without having his or her time recorded. (Id.). Kmart's policy forbids any work off the clock. (Id. at ¶ 6).

With these allegations in hand, Houde, Ector and District Trainer Sherri Ellis began an investigation of plaintiff's actions. (Id. at ¶ 7). They discovered that plaintiff had paid employees with cash vouchers for performing tasks they performed off the clock, such as painting and cleaning the store's grease trap. (Id. at ¶ 8). Plaintiff contends that such jobs were not part of these employees' normal duties, and thus not performed off the clock. (Plaintiff's Statement of Material Facts (hereinafter "Plaintiff's Statement") (Doc. 47) at ¶ 8). Moreover, plaintiff insists, she paid these workers from her own pocket. (Id.).

---

[1]The defendants use the term "associates" when refer to workers in their stores. The court finds that the term "employee" or "worker" more accurately describes the position of these people.

2

A cash voucher is a document that shows cash has been paid from the store. (Defendants' Statement at ¶ 9).   George Weitz, a Kmart employee, admitted to investigators that he had worked off the clock at plaintiff's request and had been paid with cash and vouchers.  (Id. at ¶ 10).[2]  Plaintiff admits that she paid Weitz by voucher for cleaning the grease trap.  (Id. at ¶ 11).  The parties dispute whether Weitz was working off the clock when he cleaned the grease trap.  (Id. at ¶ 12; Plaintiff's Statement at ¶ 12).  Plaintiff also paid Weitz and C.J. White, other Kmart employees, with vouchers for work they did.  (Defendants' Statement at ¶ 13).  The parties dispute whether this work should be considered work "off the clock," since painting was not normally part of their jobs.  (Id.; Plaintiff's Stataetment at ¶ 13).  The parties have the same dispute about employees paid with vouchers for painting work done in the store.  (Defendants' Statement at ¶ 14; Plaintiff's Statement at ¶ 14). Plaintiff regularly used such practices, but plaintiff insists she did not consider them improper or an example of working off the clock.  (Defendants' Statement at ¶ 15; Plaintiff's Statement at ¶ 15).  Plaintiff signed a handwritten statement on July 5, 2005 and submitted a typewritten statement on July 6, 2005 admitting to paying employees with cash and vouchers for performing various jobs.  (Defendants' Statement at ¶¶ 16-17).  Plaintiff insists that she did not admit to paying these

---

[2]Plaintiff urges the court not to consider this statement, contending that "Weitz's statement is hearsay."  (Plaintiff's Statement at ¶ 10).  Plaintiff does not explain how Weitz's statement is hearsay.  The court disagrees.  Presumably, the plaintiff complains that Weitz's statement that "Roz" asked him to work off the clock is hearsay.  (See Exh. D-2 to Defendants' Statement).  Even if "Roz's" question to Weitz could be considered a statement, if defendants introduced that statement it would be the statement of a party opponent and not hearsay.  See FED. R. EVID. 801(d)(2).

workers for work off the clock, since she did not consider what they did to be working off the clock. (Plaintiff's Statement at ¶¶ 16-18). Company policies forbid paying workers with vouchers and forbid paying employees to work off the clock. (Defendants' Statement at ¶ 19).

Kmart investigators concluded that plaintiff permitted employees to work while off the clock in violation of company policy and paid them by means that also violated the company's rules. (<u>Id.</u> at ¶ 20). As part of their investigation, Kmart's staff interviewed Donna Tomko, an hourly worker. (<u>Id.</u> at ¶ 21). She informed the investigators that she had worked off the clock and was paid with personal time. (<u>Id.</u>). Tomko had been promised a four-hour bonus for working in this way. (<u>Id.</u> at ¶ 22). Surveillance footage from the store confirmed that Tomko worked on days when she did not punch into the time clock. (<u>Id.</u> at ¶ 23). Several other employees interviewed confirmed that they had been paid with personal time for work off the clock. (<u>Id.</u> at ¶ 24).

After obtaining this information from store employees, the investigators interviewed Donna Bogart, the store's human resources manager. (<u>Id.</u> at ¶ 25). Bogart told them that she and plaintiff had responded to budget cuts by discussing what could be done to meet the store's payroll requirements. (<u>Id.</u> at 26). She and plaintiff decided to pay workers with personal time to work off the clock rather than charge that time to the store's payroll account. (<u>Id.</u> at ¶ 27). Bogart clocked in personal days for eight different workers on days those employees worked off the clock. (<u>Id.</u>). She then clocked in those workers on days where they did not work to

4

make up for lost vacation days.  (Id. at ¶ 28).   Those employees who worked off the clock kept track of their own hours.  (Id. at ¶ 29).  Plaintiff told Bogart to engage in these payroll practices.  (Id. at ¶ 31).

Houde, Ector and Ellis interviewed plaintiff on July 5, 2005.  (Id. at ¶ 33). Plaintiff admitted that she knew Bogart had manipulated time cards as described above, and admitted that she had "probably" asked employees to work off the clock "'a couple of times.'"  (Id. at ¶ 34).  Plaintiff also admitted that she and Bogart had a practice of giving employees personal time equivalent to the hours they worked off the clock.  (Id. at ¶ 36).  Plaintiff also described a practice of hours given to employees who worked off the clock were reimbursed by being punched in and out while they were off work.  (Id. at ¶ 37).

After the investigators completed their work, Chris Jemo, Kmart's Director of Field Human Resources, reviewed the investigatory file and recommended that plaintiff's employment be terminated for violations of company policy.  (Id. at ¶ 42). Ector also recommended that plaintiff be fired because she severely violated company policy.  (Id. at ¶ 43).  Kmart terminated plaintiff's employment on July 8, 2005, citing "numerous and varying violations of defendants' policies." (Id. at ¶ 44).

Portions of Kmart's company policies address the violations plaintiff allegedly committed.  Kmart's Code of Conduct specifically prohibits working off the clock.  (Id. at ¶ 45).  That Code also forbids forging or altering any document or filing "'false, fictitious or misleading entries or reports.'" (Id. at ¶ 46).  The violation of this provision is punishable by termination.  (Id.).  Kmart's Management Integrity

5

Statement provides that "'[f]alsifying refunds or cash vouchers, records or reports'" constitutes a violation of company policy, and warns that "'NO SECOND CHANCES'" will be provided.  (Id. at ¶ 47).  Likewise, the company's Policy on Integrity and Conflict of Interest prohibits "FALSIFYING STORE RECORDS OR REPORTS" and provides that "'no second chances'" will be given for such violations. (Id. at ¶ 48).  The company's employee handbook also forbids improper records of time records.  (Id. at ¶ 49).  Kmart's Payroll Administration memo makes it the store manager's responsibility to ensure that store, state, and federal payroll regulations are followed.  (Id. at ¶ 50).  Company policy also requires that hourly workers use a punch clock at the beginning and end of shifts to record their hours.  (Id. at ¶ 51).  As store manager, plaintiff had responsibility for seeing that these policies were followed.  (Id. at ¶ 56).  Kmart's investigation determined that plaintiff violated these policies, and Kmart terminated her employment.  (Id. at ¶¶ 62-63).

Kmart hired Frank Mussich to replace plaintiff.  (Id. at ¶ 65).  Mussich is far older than plaintiff.  (Id.).  After Mussich left the store, defendants replaced Mussich with Theresa Williams, who is nine years younger than plaintiff.  (Id. at ¶ 66; Plaintiff's Statement at ¶ 65).

Plaintiff filed the instant complaint on December 6, 2007.  (Doc. 1).  She filed an amended complaint on April 29, 2008.  (Doc. 8).  The parties engaged in discovery.  At the close of discovery, defendants filed the instant motion.  The magistrate judge then issued a report and recommendation which proposed that the court grant the motion for summary judgment.  The plaintiff objects and filed a brief

in support of those objections, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to the Age Discrimination in Employment Act,

29 U.S.C. §621(a) and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2(a),

the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties

of the United States.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation,

the district court must make a *de novo* determination of those portions of the report

to which objections are made.  28 U.S.C. § 636 (b)(1)(C); see also Henderson v.

Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate judge.

The district court judge may also receive further evidence or recommit the matter to

the magistrate judge with instructions.  Id.

The magistrate judge recommended that the court grant defendants' motion

for summary judgment.  Granting summary judgment is proper if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114

F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard

provides that the mere existence of some alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. <u>International Raw Materials, Ltd. v. Stauffer Chemical Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u> Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322 (1986).

**Discussion**

Plaintiff raises several objections to the report and recommendation. The court will address each in turn, as appropriate.

**1. ADEA Claim**

The Age Discrimination in Employment Act ("ADEA") prohibits "discrimination against an individual over age 40 with respect to 'compensation, terms, conditions, or privileges of employment, because of an individual's age.'" <u>Billet v. Cigna Corp.</u>, 940 F.2d 812, 816 (3d Cir. 1991) (quoting 29 U.S.C. § 623(a)). To recover under the

act, "'a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision' at issue." Id. (quoting Bartek v. Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)). A plaintiff may prove age discrimination either through direct evidence or by using burden-shifting tests developed by the courts.

Here, the magistrate judge evaluated plaintiff's claims using the burden-shifting formula.  Lacking direct evidence of discrimination, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).  Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).  If the defendant produces such evidence, the burden shifts back to the plaintiff, who provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

The magistrate judge concluded that plaintiff could not make out a prima facie

case.  The parties agree that the first three elements of the case had been made out, but the magistrate judge agreed with the defendants that plaintiff had no evidence to show that she had been replaced by someone young enough to allow for an inference of age discrimination.  Indeed, plaintiff was initially replaced by a worker older than her.  This older person worked for a year before being replaced by a woman younger than the plaintiff.  Plaintiff objects to this finding, arguing that her initial replacement was merely a placeholder, and that she was ultimately replaced by a person nine years her junior, young enough to create an inference of discrimination.

    As explained above, defendants initially hired a worker older than plaintiff to replace her.  Almost a year later, they replaced plaintiff's replacement with a significantly younger worker.  Plaintiff argues that this worker should count as plaintiff's replacement for the prima facie case.  The court will overrule the objections on this point.  The plaintiff was not replaced by someone younger than her, but by someone older.  Later, that older worker was replaced by a younger one.  Plaintiff has not offered evidence that Kmart always intended to replace plaintiff with a younger worker, but instead asks the court to ignore the older worker's presence. The court is required to inquire into who replaced plaintiff, not who replaced plaintiff's replacement.

    Plaintiff argues that there are other, reasons, however, why the court should conclude that the evidence permits an inference of age discrimination in her termination.  Plaintiff contends that she suffered discipline, and ultimately

termination, when other employees who engaged in similar behavior but were not in the protected class did not.  The magistrate judge concluded that the court should examine the circumstances surrounding plaintiff's termination to determine whether her age could be viewed as a factor in her termination, but found that the evidence advanced by the plaintiff did not raise an issue of material fact as to whether an inference of discrimination on the basis of age could be found in this case.

The Supreme Court has concluded that courts' decisions on whether plaintiffs in ADEA cases have made out a prima facie case should not be based simply on the age of the worker who replaced the plaintiff, since "the prima facie case requires '*evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.*'" O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977) (emphasis in original).  The Court rejected the idea that a worker need show only that she was a member of the protected class (older than 40) and her replacement was not.  Id. at 313.  Instead, "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is significantly younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  Id.  In a general sense, the Third Circuit has therefore held that "[a]lthough the *prima facie* elements of a discrimination claim vary depending on the particular facts of the case, the plaintiff must generally present evidence that 'raises an inference of discrimination.'" Storey v. Burns Int'l Sec.

Servs., 390 F.3d 760, 764 (3d Cir. 2004) (quoting Swierkiewicz v. Sorema N.A., 534

U.S. 506, 510 (2002)).  Moreover, "[t]he 'central focus' of the *prima facie* case 'is

always whether the employer is treating 'some people less favorably than others

because of their'" membership in a protected class.  Sarullo v. United States Postal

Service, 352 F.3d 789, 798 (3d Cir. 2003) (quoting Pivirotto v. Innovative Sys., Inc.,

191 F.3d 344, 352 (3d Cir. 1999)).

The magistrate judge examined three instances plaintiff alleges are evidence

of discrimination.  In those cases, managers younger than plaintiff allegedly

committed violations of payment and payroll policies similar to plaintiffs and did not

face disciplinary action.  The magistrate judge concluded that the evidence did not

raise an inference of discrimination.  The actions of these three individuals were not

of the same degree or kind as plaintiff's, and did not warrant a similar punishment.

Plaintiff alleges that Kmart refused to undertake a serious investigation of these

other employees, permitting an inference of discrimination.  Moreover, the

magistrate judge improperly concluded that the improper behavior of the other

managers had to be identical to plaintiff's or no inference could be drawn.

Plaintiff points to the same three individuals in connection with this matter.

She testified that Peter Bowman, younger than she, paid employees with vouchers

to steam and spray paint the exterior of Kmart buildings.  (Plaintiff's Dep. (Doc. 44-

18).  Bowman had this employee paint at least two and perhaps three stores in

exchange for such vouchers.  (Id.).  The magistrate judge found that no evidence

existed to show that Bowman compensated this employee with personal time or had

12

the employee work off the clock.  As such, his conduct was not equivalent to plaintiff's and thus the fact that he was not fired is not evidence supporting an inference of discrimination, even if plaintiff could prove that defendants were aware of this behavior.

The court agrees with the magistrate judge on this point.  To establish this element of her prima facie case, plaintiff must demonstrate that "she was treated less favorably than similarly situated employees who are not in the plaintiff's protected class."  Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 366 (3d Cir. 2008).  First, plaintiff has not produced evidence of Bowman's age, and the court therefore cannot conclude that Bowman was significantly younger than her and make an inference that defendants treated him differently because of his age.  Second, the mere fact that Bowman paid a worker with a voucher is not comparable to the plaintiff's conduct, which involved systematic efforts to subvert payroll procedures by compensating employees to work off the clock.  The fact that Bowman used one practice similar to plaintiff's does not create an inference of discrimination.  Defendants fired plaintiff for practices much different from Bowman's.

Plaintiff also points to the experience of Donna Bogart, six years younger than her.  Bogart, plaintiff points out, admitted in her own testimony that she had worked off the clock.  On July 8, 2005, Bogart wrote a letter describing her experience as a human resources manager for Kmart.  (Letter of Donna Bogart, (Doc. 44-2)).  Bogart related that she had worked for Kmart for 29 years, nine of them in human resources.  (Id.).  She had spent the previous four years in the Wilkes-Barre Kmart

13

store, willing to "do whatever it takes to get the job done."  (Id.).  Bogart admitted that

she "had worked off the clock to get the job done to my satisfaction to meet the

company's expectations."  (Id.).  Bogart blamed her need to work off the clock on the

"overwhelming workloads" demanded by the company and on budget cuts.  (Id.).

The court also agrees with the magistrate judge on this evidence.  Plaintiff was

the manager of the store where Bogart worked in human resources.  Bogart

admitted to working off the clock, but, unlike plaintiff, was not the ultimate supervisor

in charge of setting hours.  The court cannot draw an inference that plaintiff's firing

was a result of her age from this evidence.

Plaintiff also alleges that Herb Grainer, sixteen years younger than plaintiff

and a district manager, had permitted Ann Marie McCrea, his secretary, to work off

the clock, though she was a non-exempt, hourly employee.  Plaintiff testified in her

deposition that this secretary would send her e-mails late into the evening and then

again early the next morning.  (Plaintiff's Deposition, Exh. A. to Defendants'

Statement (Doc. 42) (hereinafter "Plaintiff's Dep.") at 188).   Plaintiff was also aware

that this woman worked weekends.  (Id.).  Though plaintiff had no "concrete

evidence" that this woman worked overtime, the hours that plaintiff saw her working

indicated that she was not working merely forty hours in a week.  (Id. at 189).

Grainer signed an affidavit in which he claimed that he "did not allow Ms. McCrea to

work off the clock."  (Deposition of Herbert Grainer, Exh. M to Defendants'

Statement, at ¶ 4).  McCrea's position did not require her to punch in and out daily.

(Id. at ¶ 5).  An investigation into plaintiff's allegations by Kmart human resources

14

concluded that McCrea had been paid appropriately and all of her time accounted for properly.  (Id. at ¶ 6).

Again, the court agrees with the magistrate judge that this evidence does not aid plaintiff in making out a prima facie case of age discrimination.  The sort of work McCrea did and the way she was paid was different from the workers plaintiff supervised.  Moreover, there is no evidence that Grainer compensated McCrea by clocking her in for hours she did not work or providing her with vouchers.  The allegations that plaintiff raised about McCrea–allegations for which she admitted she had no concrete evidence–were simply that she admitted to working more than forty hours per week.  These allegations are distinctly different from plaintiff's employment practices.  As such, the court cannot find an inference of discrimination in firing plaintiff and not firing a younger worker.

The court is not persuaded that plaintiff's evidence that Kmart failed to investigate allegations of inappropriate pay practices and that such failings are evidence for plaintiff's prima facie case.  There is no evidence that Kmart was aware of other systematic attempts to subvert the store's payroll regulations.  Plaintiff points to evidence that in June 2005, Lori Badger, a district trainer, told her supervisor, Michael Bidwell, that she "felt horrible" that plaintiff might lose her job.  (Doc. 44-13).  Badger was aware that Kmart was investigating employees working off the clock, and complained that "there were other managers that do things just as bad or worse."  (Id.).  Plaintiff herself sent Kmart an e-mail on August 25, 2005 to nine Kmart executives, including four who had been involved in the decision to terminate

her.  (Doc. 44-10).  She wrote that "many are guilty of the same thing I am."  (Id.).

Employers worked off the clock and "their superiors are aware of it and did nothing

about it."  (Id.).  Plaintiff complained about the excessive hours McCrea reportedly

worked.  Kmart did nothing to investigate.

After Badger made her initial complaint she refused to provide any additional

information.  Moreover, Badger's initial complaint was highly generalized, failing to

point to any managers or any specific practices.  Plaintiff has not produced any

evidence Badger produced of this group of managers who failed to abide by Kmart's

payroll policies.  The only evidence she has produced about a particular manager,

as explained above, does not compare to the allegations against plaintiff.  Plaintiff's

own e-mail to Kmart did not produce any firings, but neither did plaintiff name any

specific store managers allegedly violating payroll policies.  Kmart investigated the

one manager she named, Grainer, and the behavior the store discovered did not

lead to employment action.  As explained above, that employment practice was not

comparable to plaintiffs.  Plaintiff has therefore provided no evidence by which a

finder of fact could conclude that "the employer is treating some people less

favorably than others because of their" membership in a protected class.  Sarullo v.

USPS, 352 F.3d 789m 798 (3d Cir. 2003).  The court therefore agrees that plaintiff

has not produced evidence which could create a prima facie case on her ADEA

claim.

Because plaintiff has not made out a prima facie case, the court will overrule

plaintiff's objections and adopt the report and recommendation on this point.  The

court will grant the defendants' motion on the ADEA claim.

## 2. Title VII

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  As with the ADEA, courts have established a burden-shifting scheme for claims of sex discrimination under Title VII when no direct evidence of such discrimination exists: "the plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection."  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 408 (3d Cir. 1999) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792,802 (1973)).  If the defendant meets that burden, the burden shifts back to the plaintiff, who must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for the discrimination."  Id.

The magistrate judge concluded that plaintiff could not make out a prima facie case.  The magistrate judge applied the following test for the plaintiff meeting her prima facie burden, which the parties do not dispute: "(1) she belongs in the protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) circumstances existed that support an inference of discrimination."  (Report and Recommendation (Doc. 54) at 27) (citing Goosby v.

Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000)).  The parties

agree that the plaintiff can meet the first three elements of this test, but disagree on

the final element.

The magistrate judge concluded that plaintiff had not made out a prima facie

case because the circumstances she described did not support an inference of

discrimination.  The magistrate judge found that plaintiff could not point to similarly

situated men who had not suffered an adverse employment action.  Plaintiff disputes

this conclusion.  She points to five men she claims violated Kmart's employment

policies and did not face the discipline she did.

The court will overrule the plaintiff's objections on this point.  Plaintiff accepts

that she must make out a prima facie case that demonstrates how the circumstances

of her termination present an inference of discrimination, and argues that defendants

made no attempt to investigate other managers for evidence that they engaged in

behavior similar to plaintiff's.  Plaintiff points to five male employees in this context.

The court has already discussed Grainer and Bowman in the ADEA context.  For the

reasons explained above, Kmart's treatment of those two workers does not permit

an inference of discrimination.  Plaintiff also points to James Soucy and Pete

Lindenberger, her predecessors as manager Wilkes-Barre.  She contends that

Kmart did not investigate her allegations that they had engaged in similar

employment practices.  The court finds that these allegations do not permit an

inference of discrimination.  Soucy and Lindenberger were neither employed by

Kmart nor engaging in inappropriate payroll practices when plaintiff complained

about those practices to the investigators.  No evidence indicates that Kmart was aware of those payroll practices when the two men worked in plaintiff's position.  The fact that Kmart did not punish them after they left their positions cannot be evidence that Kmart discriminated against plaintiff.

Finally, plaintiff alleges that John Copeland paid employees with cash cards and faced only a reprimand from defendants for that behavior.  The magistrate judge found that Copeland's behavior was not comparable to plaintiff's, in that he only allegedly paid for some work by employees with vouchers and did not, as plaintiff did, instruct employees to work off the clock and then compensate them with time off and other benefits.  The only evidence produced by plaintiff of this incident an allegation in her deposition that Copeland was "reprimanded" for paying some employees with vouchers.  (Norman Dep. At 188).  Plaintiff does not have evidence of the investigation of this matter, the names of employees paid with vouchers, or the extent of Copeland's practice.  She merely claims that he faced some discipline for an allegedly inappropriate employment practice.  When compared with evidence in the record of plaintiff's systematic misconduct, the court cannot find that the evidence of defendants' different treatment of Copeland permits an inference of discrimination.  The court will therefore adopt the report and recommendation on this point as well.  The court will therefore overrule plaintiff's objections as they relate to her Title VII claim and adopt the report and recommendation.

**Conclusion**

For the reasons stated above, the court will overrule plaintiff's objections and adopt the report and recommendation.  The court will grant defendants' motion for summary judgment.  An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSALIND NORMAN,** | : | **No. 3:07cv2222** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **KMART CORPORATION**, | : | |
| **t/d/b/a Kmart and Super Kmart;** | : | |
| **KMART MANAGEMENT** | : | |
| **CORPORATION, t/d/b/a Kmart** | : | |
| **and Super Kmart;** | : | |
| **KMART OF PENNSYLVANIA, LP,** | : | |
| **t/d/b/a Kmart and Super Kmart;** | : | |
| **SEARS HOLDINGS CORP.,** | : | |
| **t/d/b/a Kmart and Super Kmart;** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 26th day of August 2011, the plaintiff's objections (Doc. 55) to the report and recommendation (Doc. 54) of Magistrate Malachy E. Mannion are hereby **OVERRULED**.  The report and recommendation is **ADOPTED**.  The defendants' motion for summary judgment (Doc. 40) is hereby **GRANTED**.  The Clerk of Court is directed to CLOSE this case.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**